## Hart *v.* Tallmadge.

### In the Court below,

BENJAMIN TALLMADGE, and FREDERICK WOLCOTT, *Plaintiffs* ; WILLIAM HART, *Defendant.*

THIS was an action on the case for a deceit. The declaration was as follows :

" That on the 9th of September, 1803, *Thomas Lloyd, jr.*
" of the city of Hartford, then being a known broker, did,
" for, and in behalf, and by procurement, of one *Joseph Hart,*
" then of said Hartford, now absconded to parts unknown,
" offer for sale to the plaintiffs, through their agent, *Heman*
" *Averill* of said city, a certain instrument in writing, pur-
" porting to be a promissory note, and to have been made
" and executed by the defendant, for the sum of two thou-
" sand dollars, payable, for value received, in ninety days
" after the date thereof, at the Hartford bank, to the or-
" der of *Willoughby Lynde*, and said *Joseph Hart*, and bear-
" ing date the 9th of September, 1803 ; and on the back of
" which instrument were written the names of the said
" *Willoughby* and *Joseph*, purporting to be a regular and genu-
" ine indorsement thereof, in blank, in common form, by the
" said *Willoughby* and *Joseph* : And the said *Averill*, as agent
" to the plaintiffs, as aforesaid, verily believing, that said in-
" strument was made and executed by the defendant, and
" that said indorsement was made by said *Willoughby* and
" *Joseph*, did then and there, for and in behalf of the plain-
" tiffs, and as their agent as aforesaid, purchase and receive
" of the said *Lloyd*, as agent to the said *Joseph*, and at his,
" the said *Lloyd's* special instance and request, the aforesaid
" instrument, and did pay the said *Lloyd* therefor, for the use
" of the said *Joseph*, two thousand dollars, of the money of
" the plaintiffs, then being in the hands of the said *Averill*, as

An action upon the case in the nature of deceit will lie for false representations, by words and actions, made by the defendant, with intent to deceive the plaintiff, whereby the plaintiff sustained damage, though the defendant had no interest in making such representations.

It is not a sufficient ground of challenge to the array of the panel, that the clerk who issued the warrant to the constables to summon the jury, is a party to the suit on trial.

1806.

HART
*v.*
TALL-
MADGE.

" their agent as aforesaid : And immediately after the pur-
" chase and receipt of said instrument, as aforesaid, the same
" was deposited, by the plaintiffs, at the said Hartford bank,
" with the cashier of said bank, that the contents thereof
" might be paid at said bank, according to the tenor thereof,
" and so continued deposited at said bank, till the end of ten
" days after the expiration of said ninety days, therein men-
" tioned : And before the expiration of said ninety days from
" the date of said instrument, the said cashier gave notice to
" the said *Joseph*, at Hartford aforesaid, that said instrument
" was deposited at said bank, as aforesaid, and of the time
" when the same would become payable according to the
" terms thereof, and when payment of the contents thereof
" was expected at said bank ; but the said *Joseph* altogether
" neglected and refused to pay the same, or any part thereof.

" And the plaintiffs say, that the instrument aforesaid,
" and the aforesaid indorsement of the said *Willoughby's*
" name thereon, were and are, as they have since discovered,
" *false* and *forged ;* that said instrument or note was not
" made and executed by the defendant, and that the indorse-
" ment of the said *Willoughby's* name thereon, was not made
" nor authorized by the said *Willoughby ;* but that the said
" instrument or note, and the indorsement of the said *Wil-*
" *loughby's* name thereon, as aforesaid, were falsely made and
" forged by the said *Joseph*, for the purpose of fraudulently
" obtaining money and credit thereby : All which was wholly
" unknown to the plaintiffs, and to their aforesaid agent, and
" to the said *Lloyd*, till the 23d day of December, now last
" past, as herein after mentioned.

" And the plaintiffs further say, that at Hartford aforesaid,
" on the 21st day of December, now last past, and after the
" aforesaid ninety days had expired, they, by their agent,
" the aforesaid *Thomas Lloyd, jr.* (the plaintiffs and the said
" *Lloyd* then not suspecting, that said instrument and indorse-
" ment were false and forged as aforesaid,) gave notice to the
" defendant, that said instrument or note had not been paid,

" and that the same had become payable, and demanded of
" the defendant, payment of the contents thereof, and the
" defendant then and there, (well knowing that the same
" was false and forged, as aforesaid, and in pursuance of a
" previous combination between the defendant and the said
" *Joseph*, to defraud the said *Joseph's* creditors, and with in-
" tent to deceive and injure the plaintiffs, and to prevent
" them from immediately sueing out legal process against
" the said *Joseph*, and procuring his body to be arrested, or
" his property to be attached thereon, to secure the contents
" of the aforesaid instrument, and also with intent to pro-
" cure time for the said *Joseph* to dispose of all his property,
" and to abscond out of the state, so that the plaintiffs might
" lose all remedy against said *Joseph*, in the premises) did
" corruptly, wickedly, and fraudulently conceal from the
" plaintiffs' last aforesaid agent, the fact, that said instru-
" ment or note was false and forged, as aforesaid ; and to
" prevent the said *Lloyd* from suspecting that said instru-
" ment or note was false and forged as aforesaid, did, then and
" there, with the same wicked and fraudulent intent, falsely
" and deceitfully give the said *Lloyd*, (then and there acting
" as agent to the plaintiffs, as aforesaid) to understand and
" believe, that the same was a genuine and authentic instru-
" ment, and for this purpose did, with the same fraudulent
" intent, falsely represent to the said *Lloyd*, that he, the de-
" fendant, had then come to said Hartford, to make arrange-
" ments for settling the claims out-standing against said *Jo-
" seph*, and did engage and promise to the said *Lloyd*, that the
" defendant would soon see the said *Lloyd* again, and attend
" to the said demand then upon him made, by the said *Lloyd*,
" as aforesaid : Whereupon the said *Lloyd*, as agent for the
" plaintiffs, as aforesaid, confiding in the honesty of the de-
" fendant, and not doubting but said instrument was genu-
" ine, and authentic, but verily believing and expecting from
" the aforesaid representation and engagement of the de-
" fendant, that the defendant would soon pay and satisfy the
" contents of said instrument, forbore to pray out an attach-
" ment, (which he would otherwise have done without de-

1806.

HART
*v.*
TALL-
MADGE.

" lay,) in favour of the plaintiffs against the said *Joseph*, to
" secure the contents of the aforesaid instrument.

" And the plaintiffs say, that at the time when said de-
" mand was made on the defendant, as aforesaid, the said
" *Joseph* was residing in said Hartford, and was possessed
" of visible property more than sufficient to satisfy said sum
" of two thousand dollars.

" And the plaintiffs further say, that immediately after
" said demand was made on the defendant, as aforesaid, *viz.*
" on said twenty-first day of December last past, and also
" on the day next following, at Hartford aforesaid, the de-
" fendant did, in pursuance and execution of his aforesaid
" wicked and fraudulent intent, and to prevent the said *Jo-*
" *seph* from being arrested by the plaintiffs, or his other cre-
" ditors, secretly advise, aid, and assist the said *Joseph* to
" abscond out of this state ; and that he the said *Joseph* did,
" in pursuance of said advice, and by the defendant's aid and
" assistance, as aforesaid, on the night of the twenty-second
" of said December, abscond out of the state, to parts un-
" known, and has ever since remained out of the state : And
" that before the said *Joseph* left the state as aforesaid, he
" had disposed of all his property, and was, and still is, alto-
" gether insolvent, and unable to pay said sum of two thou-
" sand dollars, or any part thereof : And that the defendant,
" after the said *Joseph* had absconded, as aforesaid, *viz.* on
" the twenty-third day of said December, and not before, at
" Hartford aforesaid, on demand of payment of the aforesaid
" instrument or note, then again made, informed the said
" *Lloyd*, then acting as agent for the plaintiffs, as aforesaid,
" that said instrument was false and forged, as aforesaid, and
" then and there refused, and hath ever since refused to pay
" the plaintiffs the contents of the same, or any part thereof,
" though often thereto requested, and the same remains alto-
" gether unpaid : By all which wrongs of the defendant, the
" plaintiffs have lost all remedy against the said *Joseph*, to
" their damage, &c."

The general issue being pleaded, a verdict was found for the plaintiffs.

The defendant moved in arrest of judgment, for the insufficiency of the declaration.

The Court adjudged the declaration sufficient.

After the jury were impanelled, the defendant excepted to the whole panel, on the ground, that the jurors composing it had been illegally returned. The facts were—that *Frederick Wolcott*, one of the plaintiffs, was clerk of the Court, and had, some time previous to the term, at which this cause, with his knowledge, was assigned for trial, issued his warrants, without any special direction from the Court on the subject, to the constables of the towns of Harwinton, Cornwall, Winchester, and Warren, to summon three freeholders from each of those towns to serve as jurors ; by virtue of which, the persons impanelled were drawn from the boxes provided for that purpose, and summoned accordingly. The Court over-ruled the exception, and ordered the cause to proceed.

*R. Griswold*, and *Smith*, (of Woodbury,) for the plaintiff in error, went into a minute and critical examination of the several averments in the declaration. Those which they principally considered were,—1. That the note was forged, which fact, the defendant, in pursuance of a previous combination, and with intent to deceive and injure the plaintiffs, artfully concealed ;—2. That he gave the agent to understand and believe, that the note was genuine, and falsely represented, that he had come to make arrangements for settling the claims against *Joseph Hart*, and promised to see him (the agent) again soon, and attend to the plaintiffs' demand ;—3. That in consequence of such representation and promise, the agent forbore to attach property, which *Joseph Hart* was, at that time, in possession of, to a sufficient amount to

B b b

satisfy the debt ;—and 4. That the defendant secretly advised and aided *Joseph Hart* to abscond.

1. The mere concealment of a fact, however important to be known, or with whatever views the concealment may have been made, lays no foundation for an action of deceit. No law obliges a person, situated as the defendant was, to disclose his knowledge. He is not to be made liable, because he did not turn informer against his brother. Many cases may be imagined, if this was not one of them, where secresy would be a *duty*, and where a premature disclosure of facts would be productive of the worst consequences. It makes no difference, that this forgery was in the name of the defendant. He was no more bound to inform, than if it had been in the name of another person. The case of *Pasley* v. *Freeman* (a) is the first, where a party has been subjected even for a positive falsehood. One of the judges, in that case, dissented to the decision ; and the principles recognized, by the others, require something more than mere concealment to induce a liability. In *Eyre* v. *Dunsford*, (b) the representation made by the defendant was substantially different from the real transaction ; it was grossly false.— The combination charged is not a combination to defraud, but merely to conceal the forgery. But a combination to remain silent cannot lay the foundation of an action.

2. That " the defendant gave *Lloyd* to understand and " believe," is not traversable. What did he do ? It is not stated, that he did *any act*, that he said a word, that he even pointed his finger. He represented, that " he came to Hart- " ford to make arrangements," &c. But the declaration no where says, that he did not. It says, indeed, that he " *false-* " *ly*" represented ; but this cannot be a substantive allegation. Would it be sufficient to say, that the defendant *falsely* represented a horse sound, without saying that the horse was unsound ? Or, in any action on a promissory note, that the defendant *falsely* promised to pay, without saying that

(a) 3 *Term Rep.* 51.                    (b) 1 *East* 318.

he did not pay? The representation must be distinctly stated, and the truth of it as distinctly denied. In *Eyre* v. *Dunsford*, the declaration, after saying, that the defendant " falsely affirmed," &c. goes further, and negates the things affirmed. The plaintiffs further state, that " the defendant " promised to see *Lloyd* again," &c. but they do not say, that the defendant did not see him again. Surely, there was no fraud in promising to see *Lloyd*.

3. It does not appear, that the plaintiffs sustained any damage, by the conduct of the defendant. They forbore to attach ; but they have not shewn, that if they had attached, they would have secured their debt. Because *Joseph Hart* was in possession of visible property to that amount, it does not follow, that the plaintiffs would have been able to get hold of it. He might have had other creditors, who would have taken the property. The declaration does not state, that *Joseph Hart* had property enough to pay all his debts. Every other creditor might claim to have sustained the same damage as the plaintiffs ; and the defendant might thus be made liable for the demands of a thousand creditors, at the same time that the property of *Joseph Hart*, if it had all been taken, would have been sufficient only to satisfy one of them. A creditor has no right to complain of any act done by a third person to the property of his debtor, until he has taken hold of that property. It was upon this ground, that the case of *Smith* v. *Blake* (*c*) was decided. At any rate, the damage, in the case at bar, was uncertain and contingent.

4. Advising and aiding *Joseph Hart* to abscond, could not give the plaintiffs a right of action, before they had arrested him.

The counsel for the plaintiff in error also contended, that he had no interest in the representations charged in the declaration ; and that this action does not lie, unless where the party making the representations charged has an interest.

(*c*) *Ante, vol.* 1. *p.* 258.

II. The exception to the array was well founded. The clerk cannot act at all, in a case to which he is a party. It is said, he is a ministerial officer. So is the sheriff ; but he cannot serve a writ to which he is a party. It is said, the clerk acts by the direction of the Court. So does the sheriff. There is no reason, why the former should not be incapacitated to act in his own case, as well as the latter. But *Wolcott*, in this case, not only acted as clerk, on the trial, and in making up the judgment, but exercised the very important power of selecting the jury. Were there not a difference between our mode of summoning a jury, and the English, the point would be too clear to admit of an argument. (*d*) But here, the clerk issues the warrant to the constables ; and in doing this, he has an opportunity to exercise great partiality. We may have our friends, and our enemies, in the boxes. Every man, who has a case to be tried, had rather have a jury drawn from one box than from another. There is a choice ; and it is enough for us to shew, that the clerk has the power to make that choice. So far as we have any precedents on this point, they are in our favour. In the case of *Fowler* v. *Linley*, (commonly called the *Gore case*) before the Circuit Court of the United States in this District, the array was quashed, because the deputy-marshal, who summoned the jury, had an interest in the question. The jury, in that case, were summoned under our laws, and the decision was made with reference to our laws. The opportunity for partiality, there, was less than here. There, the officer could do no otherwise than summon the men, whose names should be drawn from the boxes ; here, it was in the power of the clerk to designate what boxes the names should be drawn from. This power he exercised, too, without any direction, or advice, from the Court.

*Daggett*, and *Gould*, for the defendants in error.

1. The first ground of reversal is the insufficiency of the declaration.

(*d*) 3 *Black. Com.* 359, 365.

It is said by the counsel for the plaintiff in error, that the allegations are not direct ; that the plaintiff being disinterested in the information he gave, cannot be liable for the allegations stated ; and that there is nothing stated, by which the Court can see, that any damage has accrued to the plaintiffs below.

As to the first objection, it may be answered, that the allegations are sufficient *after verdict.* The rule laid down by Lord MANSFIELD, in *Rushton* v. *Aspinall.* (e) that a title to recover *defectively* set forth is cured by verdict, has been repeatedly adopted in this Court in its extent. Examining this declaration by this rule, there is certainly no room for the objection.

As to the point, that *Hart* had no interest in the question, relative to which he made the asseverations, it is not necessary that he should have had. This point was decided directly, in the case of *Pasley* v. *Freeman,* (f) and is not opposed by any decision, which is within our knowledge. Indeed, it would be strange, that one who deliberately deceives, having no interest to subserve, should be less guilty than he, whose conduct is governed by a prospect of advantage to himself.

Another objection is, that nothing is stated, by which the Court can see, that any damage has arisen by the agency of *Hart,* the defendant below. It is expressly averred, that *Joseph Hart's* person and property might have been taken, between the time when *William Hart* made the declarations to *Lloyd,* the agent of the plaintiffs below, and the time of his absconding. This is sufficient. In an action for obstructing process, no more is requisite. The Court may fairly say, that had not *William Hart* interfered, the debt would have been secured.

It is also contended, by the counsel for the plaintiff in

(e) *Doug.* 679.                    (f) 3 *Term Rep.* 51.

1806.

HART
v.
TALL-
MADGE.

error, that *William Hart* is not to be made liable for concealing the fact, that the note in question was a forgery ; that he was bound by no law, to disclose his brother's guilt. We answer, he might, indeed, have been silent on the subject. If, however, he speaks, he is bound to speak the truth, the whole truth material to be known. The rule in actions upon the case for deceit, as laid down by *Comyns*, in his digest, is, that " an action upon the case for a deceit lies, " when a man *does* any deceit to the damage of another." This rule accords with right reason ; and is in unison with the great principles of moral and municipal law. In the recent case of *Eyre & al.* v. *Dunsford*, (g) the defendant was holden liable in an action brought by the plaintiffs for deceit, because when he was asked by the plaintiffs, whether he might safely trust one W. T. he said, that W. T. had a credit lodged with him for 12,000l. that he knew nothing of his own knowledge, that from all the circumstances, which he had learned, he might be trusted ; and yet that this information was given without prejudice to himself. He *omitted* this fact in the statement, *viz.* that there was a condition annexed to the credit,—that goods to three times the amount were to be furnished to the defendant as security. This suppression was holden sufficient to subject the defendant to the damage sustained by the plaintiffs.

2. The other ground of error relates to the impanelling the jury. Here the array was challenged, because one of the plaintiffs issued the *venire-facias*. It is urged, that if the sheriff, who returns the jury in England, be a party, or interested, the array shall be quashed. This is true ; but what analogy is there between that case and this ? There, the sheriff selects from the whole list of freeholders of the county. Here, the clerk sends his *venire* to the towns ; and jurors, who have been selected by the town council, are drawn by lot, from the boxes.

It is further said, that the Circuit Court of the United

(g) 1 *East* 318.

States, in the *Gore case*, (so called) quashed the array, because the deputy-marshal, who executed the *venire*, was interested in the case to be tried. Here, the ground taken was, that this deputy-marshal must necessarily see the jurors to summon them; and that it was to be presumed, that he *might* exert some influence over them.

The leading argument against us is, that *Wolcott* might send his *venire* to towns favourable to him. This argument is built upon a supposition, which, we contend, the Court cannot allow, *viz.* that the jurors are not selected by the town council with impartiality. We know of no instance, in which such a general objection has prevailed.

But further, in the case before the Court, who should have summoned the jury? The clerk must do all these things, if neither absent, nor sick. In this case, he was present, and well. The court, therefore, by law, could not appoint an assistant clerk.

Again, the issuing of the *venire*, in this case, was the act of the Court, and not of the clerk. The Court do all these acts through their clerk; and had the legislature supposed, that there was not entire safety, they would have provided in this case, as they have in the case of the sheriff.

BY THE COURT, HILLHOUSE, *Asst.* dissenting,

The judgment was affirmed.